UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK X. CARBAJAL, Jr., <br><br> Petitioner, <br><br> v. <br><br> SCOTT KERNAN, <br><br> Respondent. | No. 1:17-cv-01413-SKO HC <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEA CORPUS** <br><br> **(Doc. 1)** |

Petitioner, Frank X. Carbajal, Jr., is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.[1] In his petition, Petitioner alleges one ground for habeas relief: insufficient evidence. Having reviewed the record and applicable law, the Court will deny the petition.

I. **Procedural and Factual Background[2]**

Petitioner and S. married in 2008 and have one daughter. In 2014, they were living in Atwater at the residence of Petitioner's mother, Darrelle Carbajal ("Darrelle").

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

[2] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Carbajal*, (No. F071474) (Cal. App. 5th Mar. 24, 2017), is presumed to be correct. 28 U.S.C. § 2254(e)(1).

1

Prior to the incident that forms the basis of Petitioner's charges, S. suffered a stroke, which caused her to limp and difficulty speaking, additionally, she was unable to use her right hand or lift her right arm.

On the morning of December 3, 2014, Petitioner and S. took their daughter to school. When they returned home, Petitioner wanted to have sex, but S. declined. Petitioner was insistent, but S. repeatedly rebuffed his advances, "let[ting] him know that [they] really didn't have that kind of relationship anymore." Angered by the rejection, Petitioner forced S. into her bedroom and pushed her onto the bed. Petitioner removed both of their pants and tried to engage in intercourse.

S. struggled to fight back. When she started to cry, Petitioner stated, "Those are fake tears." S. screamed for Darrelle, Petitioner's mother, who was home at the time. Darrelle knocked on the bedroom door and asked, "Do you want me to come in?" S. responded, "Yes." Darrelle entered the bedroom, saw Petitioner on top of S., and told him to get off her. Nonetheless, Petitioner continued his attempt to have intercourse with S.

According to S., when Darrelle threatened to call the police, Petitioner stated, "If you're going to call the police, I'm going to give you a reason to call the police." According to Darrelle, Petitioner said, "If the police are going to come, I'll give a reason for them to come." Petitioner punched S.'s face multiple times before leaving the house to pick up his daughter from school. Upon his arrival, he was arrested. Petitioner did not penetrate S. at any point during the incident.

Levi Crain ("Crain"), a reserve police officer for the City of Atwater, arrived at the house at approximately 1:30 p.m. Crain noted S "had severe swelling in her face, there w[ere] multiple lacerations that were bleeding, her eyes were shut, and she couldn't talk" due to a swollen jaw.

S. was transported to the hospital, where she was interviewed by Detective Matthew Vierra ("Vierra"). According to Vierra, S. "had obvious signs of swelling to her entire face as well as dried blood in her nose and her eyes appeared to be swollen shut." Vierra "had to get almost within

a foot of her mouth in order to actually understand what she was saying."

S. stayed in the hospital overnight and was prescribed pain medication. Three months later, she "still ha[d] the black eyes, . . . [she] still ha[d] a cut on [her] forehead, and [her] face [wa]s still a little swollen on both sides."

Police interviewed Petitioner on the day of the incident. He admitted he tried to have sex with S., who did not consent and "was actively resisting." When Darrelle threatened to call the police, Petitioner "became enraged and struck [S.] approximately 12 times with a closed fist with both hands." Petitioner also admitted he stated, "If I'm going to jail, it's going to be for something I did or I deserve."

At trial, Petitioner testified that on the morning of December 3, 2014, Petitioner hugged and kissed S. and rubbed her shoulders. At one point, he followed her into her bedroom, where he "proceeded to pull her pants down and push her or lead her onto the bed . . . ." After Petitioner got on top of her, S. said, "No." Petitioner asked, "Why?" S. replied "I don't want to," so Petitioner stopped his advances. Subsequently, Darrelle entered the room "without knowing what's going on" and shouted, "Get off." She "asked [S.] if she wanted . . . the police to be called and [S.] said yes . . . ." Petitioner "felt betrayed by both of them" because he "didn't feel . . . [he] had done anything to deserve that . . . ." He "became enraged and . . . struck [S.]" "maybe a dozen times."

Petitioner pled guilty to willful infliction of corporal injury upon a spouse (Cal. Penal Code § 273.5(a)). Petitioner was additionally charged with assault with intent to commit rape, (Cal. Penal Code § 220(a)(1)), and a jury convicted him of the lesser included offense of attempted rape. The jury also found Petitioner guilty of being in possession of a firearm as a felon, (Cal. Penal Code § 29800(a)), and in connection with the corporal injury and attempted rape charges, found true the special allegations that he personally inflicted great bodily injury under circumstances involving domestic violence (Cal. Penal Code § 12022.7(e)). Petitioner received an aggregate sentence of

eight years and eight months.

On March 24, 2017, the California Court of Appeal for the Fifth Appellate District ("Court of Appeal") affirmed Petitioner's conviction. On June 14, 2017, the California Supreme Court summarily denied Petitioner's Petition for Review.

On October 20, 2017, Petitioner filed his first amended petition for writ of habeas corpus before this Court. Respondent filed a response on January 23, 2018, and Petitioner filed a reply on February 26, 2018.

## II. Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

4

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

//

5

**III.    The State Court Did Not Err in Denying Petitioner's Insufficient Evidence Claims.**

Petitioner alleges two insufficient evidence claims.  First, Petitioner maintains his attempted rape conviction violates his Due Process Rights because "no evidence supports the essential element that the victim not be the spouse of the perpetrator." (Doc. 1 at 4.)  Petitioner is referring to California Penal Code § 261(a), which states: "Rape is an act of sexual intercourse accomplished *with a person not the spouse of the perpetrator . . .*" (emphasis added).  Petitioner notes that this section of the penal code was cited on the jury instructions and verdict form, rather than California Penal Code § 262(a), which states: "Rape of a *person who is the spouse of the perpetrator* is an act of sexual intercourse accomplished" under several enumerated circumstances.  (emphasis added).

Second, Petitioner contends there was insufficient evidence adduced at trial to support the great bodily injury enhancement as to the attempted rape count because "all injuries were sustained during commission of the corporal injury to spouse offense." (Doc. 1 at 4.)

Respondent counters that the Court of Appeal's rejection of Petitioner's claims was reasonable and decided as a matter of state law.  (Doc. 14.)

**A.  Standard of Review for Insufficient Evidence Claims.**

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998).  It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

**B. Petitioner's Marital Status**

    **1. State Court of Appeal Opinion**

The Court of Appeal rejected Petitioner's claim that there was insufficient evidence to support his attempted rape conviction:

> "To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible[,] and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955, 60 Cal. Rptr. 3d 534 (*Tripp*).) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755, 79 Cal. Rptr. 529, 457 P.2d 321.) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether '"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [ ]' [ ]" (*Tripp*, *supra*, at p. 955, italics omitted.)
>
> "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis what[so]ever is there sufficient substantial evidence to support it." (People v. Redmond, supra, 71 Cal.2d at p. 755.) "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [ ] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' [ ]" (*People v. Lee* (2011) 51 Cal.4th 620, 632, 122 Cal. Rptr. 3d 117, 284 P.3d 651.)
>
> . . .
>
> As noted earlier, the crime of attempted rape requires (1) the specific intent to commit rape; and (2) a direct, although, ineffectual, act toward its commission. (*People v. Clark*, *supra*, 52 Cal.4th at p. 948.) "A defendant's specific intent to commit rape may be inferred from the facts and circumstances shown by the evidence." (*Ibid*.) "As for the requisite act, the evidence must establish that the defendant's activities went 'beyond mere preparation' and that they show the defendant was 'putting his or her plan into action.' [ ]" (*Ibid*; see, e.g., *People v. Marshall* (1997) 15 Cal.4th 1, 39, 61 Cal.Rptr.2d 84, 931 P.2d 262 ["For example, an attempted forcible rape would occur if a defendant pointed a gun at a woman and ordered her to submit to sexual intercourse, but the woman managed to escape without having been touched."].)
>
> The record, viewed in the light most favorable to the prosecution, demonstrates [Petitioner] forced S. into her bedroom to engage in sexual intercourse even though

she repeatedly expressed her unwillingness to do so. [Petitioner] shoved her onto the bed, removed her pants, got on top of her, and tried to insert his penis. S. resisted notwithstanding her physical impairments and even shed tears, but [Petitioner] did not relent. S. called out to Darrelle, who entered the room and ordered her son to get off. Once again, [Petitioner] did not relent. A rational trier of fact could find the elements of attempted rape were established beyond a reasonable doubt.

[Petitioner] points out the title of CALCRIM No. 1000 and the verdict form for [the rape charge] both cited section 261, subdivision (a)(2)[FN 7] instead of section 262, subdivision (a)(1).[FN 8][FN 9] He thereby argues he could not be convicted of attempted rape because the evidence was insufficient to prove S. was not his spouse as per section 261. We reject this assertion. In the context of a criminal attempt conviction, "[o]ther than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense." (*People v. Medina* (2007) 41 Cal.4th 685, 694, 61 Cal. Rptr. 3d 677, 161 P.3d 187; accord, *People v. Herman* (2002) 97 Cal.App.4th 1369, 1385, 119 Cal. Rptr. 2d 199; *People v. Jones* (1999) 75 Cal.App.4th 616, 627, 89 Cal. Rptr. 2d 485.)[FN 10][FN 11]

FN 7. Section 261, subdivision (a)(2) reads: "Rape is an act of sexual intercourse accomplished *with a person not the spouse of the perpetrator* . . . [¶] . . . [¶] . . . [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (Italics added.)

FN 8. Section 262, subdivision (a)(1) reads: "Rape of a person *who is the spouse of the perpetrator* is an act of sexual intercourse . . . [¶] . . . [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (Italics added.)

FN 9. The jury's verdict form read: "We the jury in the above-entitled case find the defendant . . . GUILTY of a violation of Section 664/261(a)(2) . . ., Attempted rape, a felony having occurred on or about December 3, 2014.

FN 10. Whether a defendant and victim's marital status remains an element is in doubt. (See *People v. Hillard* (1989) 212 Cal.App.3d 780, 784, 260 Cal. Rptr. 625 ["It is evident that the Legislature added . . . section 262 for the sole purpose of eliminating the marital exemption for forcible spousal rape, and not to define a new separate offense, apart from rape by a stranger, of spousal rape."].)

FN 11. In addition, we are not overly concerned with the citations to section 261 in the abovementioned documents. First, while the title of CALCRIM No. 1000 – in both the standard instruction and the modified version issued in the instant case – does not expressly refer to section 262, it nonetheless specifies the instruction applies to either "Rape *or* Spousal Rape by Force, Fear, or Threats . . . ." (Italics added.) (See Judicial Council of Cal., Crim. Jury Instns. (2016) Authority to

8

CALCRIM No. 1000 p. 711; *id.*, Commentary to CALCRIM No. 1000, p. 711 [annotations contain several citations to § 262].) Second, although the citation to section 261 in the verdict form is technically incorrect, this clerical error does not render the verdict uncertain and may be disregarded. (See, e.g., *People v. Reddick* (1959) 176 Cal.App.2d 806, 820, 1 Cal. Rptr. 767 ["verdict cited wrong penal statute].)

*People v. Carbajal*, (No. F071474) (Cal. App. 5th Mar. 24, 2017), at 8-10.

### 2. Denial of Petitioner's Insufficient Evidence Claim Was Not Objectively Unreasonable

Petitioner maintains the evidence presented at trial was insufficient to support his conviction for attempted rape, because the evidence failed to prove a material element of the crime—specifically, that S. was not Petitioner's spouse at the time of the attempted rape. Petitioner's argument focuses on the jury instructions and verdict form, which both cite to California Penal Code § 261(a)(2), instead of California Penal Code § 262(a)(1). Section 261(a) defines rape "with a person not the spouse of the perpetrator." By contrast, section 262(a) defines rape of a person "who is the spouse of the perpetrator."

The Court must determine whether the evidence adduced at trial is so insufficient "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "We look to California law only to establish the elements of [attempted rape] and then turn to the federal question of whether the California Court of Appeal was objectively unreasonable in concluding that sufficient evidence supported the" conviction. *Juan H. v. Allen*, 408 F.3d 1262, 1278 n. 14 (9th Cir. 2005) (citing *Jackson*, 443 U.S. at 324 n. 16)). "[O]nce the state has spoken as to the required elements [of a crime], the federal issue of sufficiency of evidence remains: Was the evidence sufficient for a rational jury to find each required element beyond a reasonable doubt?" *Boyer v. Belleque*, 659 F.3d 957, 966 (9th Cir. 2011).

Petitioner was convicted of attempted rape. In California, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done

9

toward its commission." California Penal Code § 21a. Consequently, "[o]ther than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense." *People v. Medina*, 41 Cal.4th 685, 694 (20017).

The Court of Appeal defined attempted rape as requiring, "(1) the specific intent to commit rape; and (2) a direct although ineffectual act towards its commission." *Carbajal*, (No. F071474), at 9 (citing *People v. Clark*, 52 Cal.4th 856, 948 (2011)). Further, the "specific intent to commit rape may be inferred from the facts and circumstances shown by the evidence. As for the requisite act, the evidence must establish that the defendant's activities went 'beyond mere preparation' and that they show the defendant was 'putting his or her plan into action.'" *Id*.

Here, considering the evidence in the light most favorable to the prosecution, the evidence showed beyond a reasonable doubt that Petitioner had the specific intent to commit rape and committed a direct act towards its commission. Petitioner forced S. into her bedroom, pushed her onto the bed, removed both of their pants, and got on top of her. S. told Petitioner she did not want to have sex with him, tried to fight back, and cried. Petitioner attempted to have intercourse, but did not penetrate S. during the events. Although both the jury instructions and verdict form cited to an incorrect penal code section, the jury did not have to find Petitioner was not S.'s spouse to support the attempted rape charge.

The Court of Appeal's decision was not an objectively unreasonable application of clearly established federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. For these reasons, the Court denies Petitioner's claim that there was insufficient evidence to support the attempted rape conviction.

**C. Injuries Inflicted During the Commission of the Attempted Rape**

**1. State Court of Appeal Opinion**

The Court of Appeal rejected Petitioner's claim that there was insufficient evidence to

support the great bodily injury enhancement to the attempted rape charge:

> [Petitioner] argues "[t]here was no evidence at trial that [he] inflicted great bodily injury, or any injury, on [S.] 'in the commission of the attempted rape offense.'" Instead, he claims the evidence established he "inflicted all of the injuries . . . only during commission of the subsequent offense of corporal injury to a spouse. . . ." We disagree.
>
> "Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years." (§ 12022.7, subd. (e).) The phrase "great bodily injury" means "a significant or substantial physical injury." (d., subd. (f); see *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047, 148 Cal.Rptr. 3d 748 ["An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.'"].) The phrase "in the commission of," which is found in other enhancement statutes (see e.g., §§ 12022, 12022.3, 12022.5, 12022.53), "has been given an expansive, not a tailored meaning" (*People v. Frausto* (2009) 180 Cal.App.4th 890, 900, 103 Cal. Rptr. 3d 231). "Temporal niceties are not determinative" (*id.* at p. 902); thus, an infliction of great bodily injury "before, during, or after the felonious act may be sufficient if it can fairly be and said that i[t] was a part of a continuous transaction" (*ibid.*)
>
> As discussed previously, substantial evidence supported the attempted rape conviction. (See *ante*, at p. 9.) Furthermore, the record – viewed in the light most favorable to the prosecution – demonstrates [Petitioner] was still attempting to rape S. on the bed when Darrelle threatened to phone the police. [Petitioner], who remained on top of S. (see *People v. Jones* (2001) 25 Cal.4th 98, 109, 104 Cal. Rptr. 2d 753, 18 P.3d 674 [commission of a sexual offense continues as long as the assailant maintains control over the victim.]), became incensed, announced his intention to comport himself in a manner that would warrant a 911 call, and struck S.'s face more than 10 times. As a result, S. sustained severe facial severe facial swelling, lacerations, and bruising around the eyes. A rational trier of fact could find – beyond a reasonable doubt – defendant inflicted great bodily injury in the commission of the attempted rape.

*People v. Carbajal*, (No. F071474), at 11-12.

### 2. Denial of Petitioner's Insufficient Evidence Claim Was Not Objectively Unreasonable

Petitioner does not dispute that there was sufficient evidence to support the jury's finding that he inflicted great bodily injury upon S. Instead, Petitioner argues he inflicted great bodily injury during the commission of corporal injury to a spouse, rather than during the attempted rape. (Doc. 1 at 4.) Consequently, Petitioner contends he did not inflict great bodily injury "in the commission of" attempted rape.

Petitioner contends that the Court of Appeal incorrectly interpreted the phrase "in the commission of" as set forth in California's sentencing enhancement statutes. However, the state court's interpretation of its statutory language is binding on a federal court on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state's interpretation of state law . . . binds a federal court sitting in habeas review.").

Here, the Court of Appeal found that the infliction of great bodily injury can occur during the commission of the offense if "it can fairly be said that i[t] was a part of a continuous transaction." *People v. Carbajal*, (No. F071474), at 11-12. At the time Darrelle entered the room, after hearing S. yell for her, Petitioner was on top of S. and trying to have sex with her. Petitioner continued attempting to have sex with S. after Darrelle entered the room. When Darrelle threatened to call the police, Petitioner struck S. multiple times and caused her injuries. Based on this evidence, it was not unreasonable for the Court of Appeal to find that the great bodily injury occurred as "part of a continuous transaction" with the attempted rape.

Based on the foregoing, the Court denies Petitioner's claim that there was insufficient evidence to support a finding that Petitioner inflicted great bodily injury in the commission of attempted rape.

### IV.  **Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for

commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

>   (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>      (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>      (B) the final order in a proceeding under section 2255.
>
>      (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>      (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**V.    Conclusion**

Based on the foregoing, the Court hereby DENIES with prejudice the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability. The Clerk of the Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated: **September 21, 2018**　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE